IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KIMBERLY CASHMAN, )<br>)<br>    Plaintiff, )<br>)<br>vs. )<br>)<br>BETHANY COLLEGE, )<br>Serve: Dr. Elizabeth Mauch )<br>335 East Swensson St. )<br>Lindsborg, KS 67456 )<br>)<br>    Defendant. ) | Case No. |

## COMPLAINT

Plaintiff Kimberly Cashman, for her Complaint against Defendant Bethany College, states and alleges as follows:

### INTRODUCTION

1. This is an action for damages and other relief on behalf of Plaintiff Kimberly Cashman, a former financial aid administrator and adjunct instructor at Bethany College.

2. In the decade leading up to Defendant's hiring of Plaintiff, Defendant had twice been sanctioned by the federal Department of Education for noncompliance with a range of rules and regulations concerning the administration of federal student financial aid grant and loan programs, including in 2010, when Defendant was placed on Heightened Cash Monitoring, and at the conclusion of the 2015 program review, when Defendant was fined due to its continued noncompliance. Defendant remains on Heightened Cash Monitoring status with the Department of Education as of this filing.

1

3. From virtually her first day on campus in 2020, Plaintiff observed that Bethany College appeared to still be out of compliance with a range of rules and regulations that it had been penalized for in previous years.

4. When Plaintiff raised her concerns with Defendant's ongoing violations, Defendant's representatives consistently ignored her concerns, refused to take necessary steps to fix the problems, and even actively discouraged her from seeking available governmental advice for resolving regulatory issues.

5. In March 2021, and again in April 2021, the Defendant's general counsel instructed Plaintiff to not report her concerns regarding the ongoing violations to the federal government, as Plaintiff was legally obligated to do,[1] and instead to consider herself "fully absolve[d]" by her internal reporting.

6. Plaintiff viewed these messages, directing her to ignore her legal obligation to report fraud, waste, and abuse, as a final sign that Defendant was not committed to resolving its ongoing violations of federal financial aid law, but instead was only concerned with keeping Plaintiff from shining a light on Bethany College.

7. Consequently, on April 25, 2021, Plaintiff came to the regrettable decision that she had no choice but to resign her position in the financial aid office.

8. The following morning, Plaintiff was abruptly terminated from her role as an adjunct instructor, even though she had not sought to resign from that position.

9. Plaintiff brings this action to hold the Defendant accountable for retaliating against her in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729-3733 ("False Claims Act"), and Kansas state law.

---

[1] 34 C.F.R. § 668.16.

**PARTIES, JURISDICTION, AND VENUE**

10. Plaintiff is a resident of the State of Kansas and a former employee of Bethany College.

11. Defendant is a nonprofit corporation organized and existing under the laws of the State of Kansas with its principal place of business in the State of Kansas. It can be served through its President, Dr. Elizabeth Mauch, at 335 E. Swensson Street, Lindsborg, Kansas 67456.

12. This Court has subject matter jurisdiction over this matter, which includes claims brought under the False Claims Act, 31 U.S.C. §§ 3729-3733, pursuant to 28 U.S.C. §§ 1331.

13. This Court has supplemental subject matter jurisdiction over Plaintiff's claims arising under Kansas common law pursuant to 28 U.S.C. § 1367, because the facts underlying her Kansas claim for wrongful discharge in violation of public policy are so related to her claims under the False Claims Act that they form part of the same case or controversy.

14. This Court has personal jurisdiction over Defendant because it is incorporated within the state of Kansas and operates at its campus in Lindsborg, Kansas, and pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process and provides that an action under the False Claims Act "may be brought in any judicial district in which the defendant…can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred."

15. This action properly lies in the District of Kansas pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district, and because Plaintiff's claims arose in this judicial district. Venue in the District of Kansas is also authorized pursuant to 31 U.S.C. § 3730(h)(2).

**BACKGROUND FACTS**

16. Plaintiff was hired by Defendant as Assistant Director of Financial Aid in July 2020.

17. In January 2021, Defendant hired Plaintiff to an additional role as an adjunct instructor in the Interdisciplinary Studies department.

18. Plaintiff is well-respected in her field, and she was elected as President-Elect of the Kansas Association of Student Financial Aid Administrators ("KASFAA") while employed by Defendant.

19. ***Plaintiff Begins to Notice Improprieties in Defendant's Financial Aid Office.*** On Plaintiff's first day working for Defendant, Mark Bandre, then the Director of Financial Aid and College Registrar, explained to Plaintiff that when he received a student aid verification form without the proper signatures, he would first contact the student or the parent who submitted the paperwork and then if that individual wasn't on campus, Bandre would sign the form on that student or parent's behalf.

20. Plaintiff found this practice concerning, but initially believed that it may be permissible under a rule she was unaware of.

21. Plaintiff soon checked her intuitions on Bandre's practice with other financial aid professionals in the KASFAA network.

22. Plaintiff's contacts within KASFAA confirmed her view that Bandre's practice of signing verification forms in place of the student or parent who filled out the forms was illegal under applicable Department of Education regulations.

23. Throughout her tenure, Plaintiff observed multiple occasions where Bethany College officials directed students to sign various financial aid forms on behalf of their parents.

24. Plaintiff raised her concerns with Bethany College's practice of directing students to sign forms on behalf of their parents with school officials to Bandre and then-Vice President of Enrollment Management, Matt Pfannenstiel.

25. In August 2020, Plaintiff received an email from Pfannenstiel, in which Mr. Pfannenstiel acknowledged that he was aware of the Defendant's practice in this regard, that he had determined the Defendant should stop this practice, and directing the Financial Aid office to not go back to students whose forms had been improperly signed to correct them.

26. ***Plaintiff Suggests that Bethany Contact the Department of Education.*** In August 2020, Plaintiff and Bandre had a difference of opinion on the best way to handle a situation involving late disbursement of federal financial aid in line with applicable Department of Education regulations.

27. Bandre emailed the National Association of Student Financial Aid Administrators ("NASFAA") seeking "knowledgeable outside (and non-federal…) opinions" on the matter.

28. When Bandre received an answer from NAFSAA that aligned with his initial viewpoint, he determined that Defendant should follow the advice set out in that answer.

29. Plaintiff noted that she had received information from NASFAA that directly conflicted with the advice given to Bandre, and suggested that they email AskAFed, the Department of Education's help tool, to resolve the issue.

30. Plaintiff had previously emailed AskAFed to help resolve her questions regarding other Department of Education regulations.

31. Bandre responded that he did not ever want to email AskAFed because he did not want to give the federal government any reason to shine a light on Defendant.

32. Plaintiff reported Bandre's comment, and Defendant's risk of violating Department of Education regulations regarding student loan disbursement, to Bethany College Interim CFO Krista Harris and HR officer Jennie McCall.

33. Harris responded, "of course [Bandre] doesn't want to actually ask who might fine us later down the road."

34. ***Defendant's Violation of Department of Education "Maximum Time Frame" Requirements.*** On or around August 18, 2020, as Plaintiff was preparing for the initial Fall semester student aid disbursement, the records of one student jumped out at her.

35. Plaintiff noted that this student's transcript showed only 15 credit hours completed out of 130 credit hours attempted.

36. Plaintiff was aware that undergraduate students could only receive federal financial aid for up to 150% of the number of credits required for their degree ("Maximum Time Frame," or "MTF" Requirement). For example, if a bachelor's degree requires 120 credit hours, federal aid is available for only up to 180 credit hours.

37. Plaintiff was also aware that once it became mathematically impossible for a student to complete their degree program within the required MTF time frame, that student was no longer eligible for federal financial aid.

38. Plaintiff requested the Registrar's office to run a degree audit on this student, which determined that the student was in danger of exceeding the MTF requirement needed to complete degree requirements.

39. Plaintiff notified Bandre of the issue, who informed her that Defendant did not have a procedure for identifying students in danger of exceeding MTF requirements, or who were mathematically precluded from meeting MTF requirements, prior to a student's application for graduation.

40. Plaintiff learned that three students who received federal student aid for the Fall 2020 semester should have been denied student aid due to exceeding MTF requirements, and been

6

required to follow an established Satisfactory Academic Progress policy in order to regain financial aid eligibility.

41. After she raised the above-described issues with Bandre, Bandre came into Plaintiff's office, loomed over her, and informed her that "if [Plaintiff was] going to continue to question him on every policy at Bethany, then maybe Bethany is not the place for [her]."

42. Plaintiff felt threatened by Bandre's statement, and she reported his statement to Harris and Pfannenstiel.

43. **Return of Title IV Funds ("R2T4") Issue.** Early in the Fall 2020 Semester, Bethany College's football coach left the school.

44. In the days immediately following the coach's departure, several football players went to the Registrar's office to withdraw from Bethany College and pick up R2T4 forms.

45. The Department of Education's R2T4 regulations require schools such as Defendant to calculate the amount of Title IV student aid to be returned, and the date on which those funds must be returned, based on the date a student requests the form, indicating their intent to totally withdraw.

46. Plaintiff was told that Defendant's policy for returning Title IV funds was to wait until the student completed the withdrawal form, had it signed by various offices on campus, and returned to the Registrar. The Registrar's office would then inquire with the student's instructors about their last day of attendance, and use that date to process the R2T4 forms.

47. Plaintiff was aware that Defendant's practice for processing R2T4 forms violated Department of Education regulations and often resulted in an improper withdrawal date being used, and thus an improper amount of Title IV funds being returned to the federal government.

48. Plaintiff raised her concerns with this violation to Bandre and Pfannenstiel, and indicated her belief that Defendant should be following Department of Education regulations.

49. Bandre and Pfannenstiel overruled Plaintiff's concerns and told her that Defendant would continue processing R2T4 forms as it always had.

50. Plaintiff again discussed an R2T4 compliance issue with Bandre following the completion of some of Bethany College's short-semester, 8-week courses.

51. After grades were posted on the short-semester courses, one student informed Defendant that they had decided to fully withdraw rather than continue into the second half of the semester.

52. Plaintiff told Bandre that she believed federal regulations required Defendant to complete the student's R2T4 based on the final date of the short-semester class as the last day of attendance.

53. Bandre disagreed with Plaintiff's position, and directed her to complete the form, and return indicated financial funds, based on the last day of attendance as reported by the instructor.

54. Plaintiff, having previously been warned against engaging the Department of Education on regulatory questions, reached out to NASFAA for advice. The NASFAA help line, AskRegs, supported Plaintiff's position regarding the proper interpretation of the regulations.

55. Despite having her view confirmed by NASFAA, Bandre directly Plaintiff to follow his understanding of the rules, despite the fact that Bandre was not permitted to process financial aid in light of his dual role as the College Registrar.

56. Bandre's directive caused the student's last day of attendance to be reported incorrectly, and thus likely caused the improper amount of Title IV funds to be returned to the federal government.

57. When Plaintiff became Interim Director of Financial Aid at the beginning of the Spring 2021 semester, she implemented a process to have R2T4's processed as of the date the student requested withdrawal.

58. Even after implementing this process however, Plaintiff still frequently received emails indicating that a student's last day of attendance came at a different time from the request for withdrawal, putting her (and Bethany College) out of compliance with federal R2T4 regulations.

59. ***Plaintiff Reports her Concerns to College President.*** In August 2020, Plaintiff approached Bethany College's President, Dr. Elizabeth Mauch, about her concerns with the Financial Aid Office's violation of Department of Education regulations, and the fact that several violations the school had been fined for as part of a Department of Education program review in 2015 still appeared to be ongoing.

60. Dr. Mauch initially took Plaintiff's report seriously, and authorized her to conduct a review of all procedures in the financial aid office in the context of the financial aid handbook to determine the extent of the issue and develop new procedures going forward.

61. In October 2020, as the extent of problems in the financial aid office started to become clear, Mauch told Plaintiff she planned to remove Bandre from the Financial Aid office and promote Plaintiff to his position.

62. In early January 2021, Defendant's administration was "reorganized" such that Bandre was given a new dual title as College Registrar and Dean of Academic Innovation, and Plaintiff was named Interim Director of Financial Aid.

63. Even after his removal from the office, Bandre continued to be involved in financial aid issues and processing of files.

64. ***Plaintiff uncovers Pell Grant fraud within financial aid office.*** In November 2020, Plaintiff discovered conflicting information in the financial aid file for a student who was married to Bethany College employee Jessica Esquivel, who worked in the registrar's office.

65. The student in question had received a tuition waiver for several semesters due to being married to a college employee. However, the student's FAFSA and other financial aid information listed him as single, and did not list his wife's income on his application for aid.

66. Due to the information on his financial aid paperwork, the student was receiving a federal Pell grant, and was listed as being eligible for a much larger financial aid package than he otherwise should have been.

67. Working with an employee in the registrar's office, Dala Roberts, Plaintiff learned that the student in question appeared to have several altered grades, raising suspicion that his transcript was being altered by Ms. Esquivel.

68. Plaintiff took the issue to Defendant's CFO, Krista Harris, and to Dr. Mauch.

69. Plaintiff was instructed to correct the paperwork for the ongoing semester, but was told not to go back and look into records from prior semesters, even though the student in question had been enrolled at Bethany College for three years.

70. No investigation into the issue was conducted beyond determining the actual marital status for the student and Ms. Esquivel, and Ms. Esquivel remained in her position.

71. ***Defendant's first attempt to "absolve" Plaintiff of her duty to report.*** In March 2021, as part of her system-wide review authorized by Dr. Mauch, Plaintiff uncovered numerous suspicious student verification forms that appeared to have forged information and signatures.

72. On or around March 11, 2021, Plaintiff reported the first Verification form she believed to be fraudulent to Harris, and General Counsel, Amie Bauer. Plaintiff also discussed the issue with the new Assistant Director of Financial Aid, Jeff Roush.

73. In their conversations, both Roush and Harris stated that they agreed that the form appeared to have been completed fraudulently, and Bauer indicated her belief that the issue needed further review.

74. The day after her report to Harris and Bauer, Plaintiff discussed the issue with Pfannenstiel and Roush.

75. Pfannenstiel asked Plaintiff if the offending document could simply be destroyed and replaced with a properly filled out version. Plaintiff responded that she would not be part of destroying any documents.

76. Two days after her discussion with Pfannenstiel and Roush, on or about March 14, 2021, Plaintiff met with Mauch to discuss the fraudulently completed file. In their meeting, Plaintiff told Mauch that if the school was unable to resolve the issue, she (Plaintiff) would have no choice but to report her findings to the Department of Education.

77. In the days following her discussion with Mauch, Plaintiff discovered a second file with a fraudulently filled out verification form.

78. On or around March 16, 2021, Plaintiff spoke with Bauer about the issue, and Plaintiff told Bauer that she was concerned that if the issue was not able to be resolved, she would have to report the issue to the Department of Education.

11

79. The following day, Bauer sent Plaintiff an email that Plaintiff should consider her internal reports sufficient to "fully absolve" her of any further concerns with the fraudulently completed verifications.

80. Plaintiff understood that, under the terms of Defendant's Program Participation Agreement with the Department of Education, she as the Interim Director of Financial Aid was under an ongoing duty to ensure compliance with federal financial aid regulations and to report instances of ongoing non-compliance to the federal government.

81. In addition, Plaintiff was aware that as the head of Defendant's financial aid office, she could be held personally, criminally liable for any financial aid fraud perpetrated by Defendant.

82. ***Plaintiff discovers the extent of Defendant's financial liability.*** Through her system-wide review, Plaintiff discovered that the prior regulatory violations she had uncovered were not isolated incidents, but were in fact part of a broader problem of improperly documented financial aid forms, fraudulently completed forms, and incomplete financial aid files. In total, Plaintiff discovered that Defendant was obligated to return approximately $1.7 million to the Department of Education that was received based on unlawfully completed forms and incomplete files for the 2020-21 academic year alone.

83. Plaintiff informed Bethany College leadership of her findings and of the school's duty to return the $1.7 million within 10 days, with the possibility of re-disbursement for any students who were able to submit proper paperwork.

84. Plaintiff was told that the school lacked the funds to pay back the government everything it was owed.

85. As a result of Defendant's inability to pay back the $1.7 million, Plaintiff was asked to try and correct as many of the accounts as she could prior to the end of the semester.

86. Plaintiff worked diligently to correct as many of the violations and complete as many files as she could, but at the time her employment ended, with no further time for corrections available, she was still aware of over $800,000 that needed to be returned to the government.

87. ***Defendant's second attempt to "absolve" Plaintiff of her duty to report.*** On April 19, 2021, as Plaintiff continued her discussions with Mauch, Pfannenstiel, Harris, and other members of Bethany College's executive team about the ongoing issues in the financial aid office, Plaintiff received an email from Bauer, Defendant's General Counsel, reminding her that as of mid-March, Plaintiff "became absolved" of her duty to report Defendant's violations of federal financial aid regulations to the Department of Education.

88. In the time since her initial reports, Defendant had taken no steps to improve its processes for ensuring compliance with federal financial aid regulations going forward.

89. While Plaintiff had taken it upon herself to attempt to correct as many errors as she could, she became frustrated that her requests for additional resources and help in both correcting past violations and ensuring compliance going forward were pushed to the side.

90. Plaintiff viewed Bauer's two emails "absolving" her of the duty to report as a further signal that Defendant was not in fact interested in resolving its ongoing violations, but was instead only focused on keeping her quiet and, as Bandre had previously told her, keeping the federal government from "shining a light" on Bethany College.

91. ***Plaintiff's Constructive Discharge from the Financial Aid Office.*** Faced with Defendant's ongoing violations and attempts to forestall her from fulfilling her duty to report, Plaintiff made the difficult but necessary decision to resign from her position on April 25, 2021.

92. In an email to college leadership, Plaintiff stated that Defendant's actions made it "clear that [she did] not have the support to make the necessary changes to get us in compliance with federal rules and regulations."

93. Plaintiff's email further stated, "Given the matters of fraud and other failures within the Financial Aid Office that I have brought to the institution's administrators since the beginning of March (and earlier) and the experiences I have had since reporting these findings, I believe it is best . . . for me to leave Bethany College."

94. In her email, Plaintiff further stated her intent to complete her teaching duties for the remainder of the semester in her adjunct instructor role.

95. ***Plaintiff is terminated from her position as an adjunct instructor.*** The morning after Plaintiff sent her resignation letter, Bethany College leadership held a rushed meeting to determine how to respond.

96. At approximately 8:00 a.m. on April 26, 2021, Plaintiff's access to the school's online platform was abruptly cut off as she was making preparations for her upcoming classes.

97. A few minutes later, Defendant informed Plaintiff that Bethany College felt that a "clean break" was best, and that she was being terminated from her teaching position.

## COUNT I – RETALIATION IN VIOLATION OF THE FALSE CLAIMS ACT

98. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

99. Defendant's practice of submitting incorrect or fraudulently completed documentation to the federal government for the receipt of federal financial aid, and continuing its practices even after Plaintiff explicitly told Defendant's representatives the proper way to submit such documentation, violated the False Claims Act in that Defendant knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a).

100. Plaintiff was an employee of Defendant Bethany College, both in the financial aid office and as an adjunct instructor. As an employee, Plaintiff was aware of Defendant's fraudulent conduct in violation of applicable laws and regulations, and/or had a reasonable belief Defendant was engaged in such fraudulent or unlawful conduct in violation of applicable laws and regulations, as described more fully above.

101. Plaintiff engaged in lawful, protected conduct when she reported Defendant's unlawful or fraudulent billing practices to Bandre, Pfannenstiel, Harris, Bauer and Mauch, and when she informed those administrators of her duty to report such violations to the federal government.

102. Plaintiff's lawful, protected activities were undertaken in furtherance of her efforts to stop one or more violations of the False Claims Act.

103. Defendant took no action to improve its financial aid processes in response to Plaintiff's complaints, and retaliated against Plaintiff by actively discouraging her from further reporting and improperly seeking to and "absolve" Plaintiff from following her legal duty to report violations to the federal government.

104. Defendant's retaliatory actions and refusal to adequately address its ongoing violations in response to Plaintiff's report of violations of the False Claims Act created an intolerable work environment for Plaintiff such that no reasonable person in her position would have remained in her role in the financial aid office.

105. Plaintiff was constructively discharged as Interim Director of Financial Aid on April 25, 2021.

106. On April 26, 2021, Plaintiff was terminated from her role as an adjunct instructor.

107. The timing and circumstances of the termination give rise to an inference that Plaintiff's employment was terminated in retaliation for her reporting Defendant's violations of federal financial aid regulations and the False Claims Act.

108. As a direct and proximate result of Defendant's actions, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

109. As a further direct and proximate result of Defendant's actions, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related non-economic damages for which she is entitled from Defendant as damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant Bethany College in the maximum amount allowed to her pursuant to 20 U.S.C. Section 3730(h)(2), including reinstatement with the same seniority status that Plaintiff would have had but for the retaliation, two (2) times the amount of her back pay, an amount fair and reasonable to compensate her for her emotional distress, her reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II -- RETALIATION AND WRONGFUL DISCHARGE IN VIOLATION OF KANSAS PUBLIC POLICY

110. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

111. Plaintiff was an employee of Defendant Bethany College. As an employee, Plaintiff was aware of Defendant's fraudulent and unlawful conduct in violation of applicable laws and regulations and/or had a reasonable belief Defendant was engaged in fraudulent conduct in violation of applicable laws and regulations, as described more fully above.

112. Defendant knowingly presented or caused to be presented false claims for payment or approval to the United States government and continued to do so after they were informed that the practice was fraudulent and unlawful.

113. Defendant knowingly made, used, or caused to be made or used false records or statements material to false or fraudulent claims in order to get false or fraudulent claims paid or approved by the United States government and continued to do so after they were informed that the practice was fraudulent and unlawful.

114. Plaintiff reported her concerns regarding Defendant's ongoing violations of public policy to her superiors, including Bandre, Pfannenstiel, Harris, Bauer and Mauch.

115. Plaintiff's reports were made in good faith based on a concern regarding the wrongful activities she reported rather than for a corrupt motive.

116. As set out above, Plaintiff was constructively discharged from her role in the financial aid office on April 25, 2021, and was terminated from her role as an adjunct instructor on April 26, 2021.

117. The timing and circumstances of the constructive discharge and termination give rise to an inference that Plaintiff's termination and discharge were a result of Defendant's retaliatory actions in response to her reports of violations of public policy.

118. As a direct and proximate result of Defendant's actions, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

119. As a further direct and proximate result of Defendant's actions, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related non-economic damages for which she is entitled from Defendant as damages.

120. Defendant's retaliation against Plaintiff was willful and deliberate and done with reckless disregard for the rights of Plaintiff, thereby entitling Plaintiff to exemplary and/or punitive damages in an amount that will punish Defendant and deter Defendant and others from like conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant Bethany College, a finding that she has been subjected to unlawful retaliation prohibited by the common law of the State of Kansas; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for her costs expended; and for such other and further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to trial by jury.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby requests the trial be held in Wichita, Kansas.

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS, LLP**

/s/ *Kevin A. Todd*
Kevin A. Todd, KS 78998
ktodd@hkm.com
John Ziegelmeyer, KS No. 23003
jziegelmeyer@hkm.com
Brad Thoenen, KS No. 24479
bthoenen@hkm.com
1501 Westport Road
Kansas City, MO 64111
Phone and Fax: (816) 301-5430

ATTORNEYS FOR PLAINTIFF